## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MATTHEW ANDERSON, and SHAWN
DOLIFKA, individually and on behalf of all
other persons similarly situated,

               Plaintiff,

     v.

TETHER HOLDINGS LIMITED, TETHER
LIMITED, TETHER INTERNATIONAL
LIMITED, TETHER OPERATIONS LIMITED,
IFINEX INC., BFXNA INC., and BFXWW
INC.,

               Defendants.

Case No. 1:21-cv-10613-ALC

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.   INTRODUCTION ................................................................................................... 1

II.  ARGUMENT ........................................................................................................... 3

   A.  Plaintiffs Plausibly Allege Article III Standing ................................................ 3

       1.  Plaintiffs Sufficiently Plead Injury-in-Fact ............................................... 4

   B.  Plaintiffs Have Standing to Pursue Declaratory and Injunctive Relief............. 7

   C.  Plaintiffs State Contract Claims........................................................................ 9

   D.  Plaintiffs State a Claim for Unjust Enrichment ............................................... 15

   E.  Plaintiffs State a Claim Under New York's GBL § 349.................................... 18

       1.  Tether's GBL Injury Argument Fails ......................................................... 19

       2.  Plaintiffs' § 349 Claims are Timely ........................................................... 23

III. CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*ASG & C, Inc. v. Arch Specialty Ins. Co.*,
No. 21-1761-cv, 2022 WL 839805 (2d Cir. Mar. 22, 2022)................................................... 18

*Belfiore v. Procter & Gamble Co.*,
94 F. Supp. 3d 440 (E.D.N.Y. 2015)....................................................................................... 21

*Berman v. Sugo LLC*,
580 F. Supp. 2d 191 (S.D.N.Y. 2008).................................................................................... 11

*Berni v. Barilla S.p.A.*,
964 F.3d 141 (2d Cir. 2020)..................................................................................................... 9

*Bildstein v. MasterCard Int'l, Inc.*,
No. 03 Civ. 9826I, 2005 WL 1324972 (S.D.N.Y. June 6, 2005).................................... 19, 23

*Briarpatch L.P. v. Phoenix Pictures, Inc.*,
373 F.3d 296 (2d Cir. 2004)................................................................................................... 18

*Brown v. Kellogg Sales, Co.*,
No. 1:20-CV7283, 2022 WL 992627 (S.D.N.Y. Mar. 31, 2022).............................................. 9

*Brown v. Kerry Inc.*,
No. 20-CV-9730 (PGG)(JLC), 2021 WL 5446007 (S.D.N.Y. Nov. 22, 2021) ......................... 5

*Campbell v. Whole Foods Mkt. Grp.*,
516 F. Supp. 3d 370 (S.D.N.Y. 2021)....................................................................................... 9

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016)....................................................................................................... 3

*Catalano v. BMW of North America, LLC*,
167 F. Supp. 3d 540 (S.D.N.Y. 2016).................................................................................... 23

*Chufen Chen v. Dunkin' Brands, Inc.*,
954 F.3d 492 (2d Cir. 2020)................................................................................................... 26

*Cohen v. Northeast Radiology, P.C.*,
No. 20CV1202 (VB), 2021 WL 293123 (S.D.N.Y. Jan. 28, 2021) ........................................ 23

*Corsello v. Verizon N.Y., Inc.*,
18 N.Y.3d 777 (2012) ............................................................................................................ 25

*Council v. Better Homes Depot, Inc.*,
No. 04CV5620, 2006 WL 2376381 (E.D.N.Y. Aug. 16, 2006).............................................. 24

*Cox v. Microsoft Corp.*,
　8 A.D.3d 39 (N.Y. 1st Dep't 2004) ........................................................ 15, 16, 17

*Douyon v. N.Y. Med. Health Care, P.C.*,
　894 F. Supp. 2d 245 (E.D.N.Y. 2012) ............................................................. 22

*Ebin v. Kangadis Food, Inc.*,
　No. 13 Civ. 2311 (JSR), 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2003) ................. 5, 19, 20, 22

*Einhorn v. Mergatroyd Productions*,
　426 F. Supp. 2d 189 (S.D.N.Y. 2006) .............................................................. 10

*Everlast World's Boxing Headquarters Corp. v. Trident Brands, Inc.*,
　No. 19-CV-503 (JMF), 2020 WL 917058 (S.D.N.Y. Feb. 26, 2020) ...................... 14

*Fero v. Excellus Health Plan, Inc.*,
　236 F. Supp. 3d 735 (W.D.N.Y. 2017) ............................................................. 10

*Gaddy v. Eisenpress*,
　No. 99 Civ. 3781, 1999 WL 1256242 (S.D.N.Y. Dec. 27, 1999) ........................... 12

*Gale v. Int'l Bus. Machs. Corp.*,
　9 A.D.3d 446 (N.Y. 2d Dep't 2004) ................................................................ 24

*Garcia v. Chrysler Group LLC*,
　127 F. Supp. 3d 212 (S.D.N.Y. 2015) .............................................................. 23

*Georgia Malone & Co., Inc. v. Rieder*,
　973 N.E.2d 743, (N.Y. 2012) ......................................................................... 17

*Gill v. Nat'l Football League*,
　No. 21 Civ. 1032 (PAE), 2021 WL 5087900 (S.D.N.Y. Nov. 2, 2021) .................. 12

*Goldemberg v. Johnson & Johnson Consumer Co., Inc.*,
　8 F. Supp. 3d 467 (S.D.N.Y. 2014) ................................................................. 22

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*,
　172 A.D.3d 405 (N.Y. 1st Dep't 2019) ......................................................... 21, 24

*Holsworth v. BProtocol Found.*,
　No. 20 Civ. 2810, 2021 WL 706549 (S.D.N.Y. Feb. 22, 2021) ............................. 6

*Hughes v. Ester C Co.*,
　930 F. Supp. 2d 439 (E.D.N.Y. 2013) ........................................................... 15, 16

*Impulse Mktg. Grp., Inc. v. Nat'l Small Bus. Alliance, Inc.*,
　No. 05-CV-7776 (KMK), 2007 WL 1701813 (S.D.N.Y. June 12, 2007) .................. 12

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   381 F. Supp. 2d 192 (S.D.N.Y. 2004) ................................................................. 6

*In re Canon Cameras Litig.*,
   No. 05 Civ. 7233, 2006 WL 1751245 (S.D.N.Y. June 23, 2006) ........................... 16

*In re Customs & Tax Admin. Of the Kingdom of Denmark (SKAT) Tax Refund Litig.*,
   No. 18-md-2865 (LAK), 2020 WL 70938, n.12 (S.D.N.Y. Jan. 7, 2020) .............. 20

*In re N. Sea Brent Crude Oil Futures Litig.*,
   256 F. Supp. 3d 298 (S.D.N.Y. 2017) ........................................................... 17, 18

*Izquierdo v. Panera Bread Co.*,
   450 F. Supp. 3d 453 (S.D.N.Y. 2020) ........................................................... 6, 22

*John v. Whole Foods Market Group, Inc.*,
   858 F.3d 732 (2d Cir. 2017) .............................................................................. 4

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir. 2000) (reversing ............................................................. 18

*Koch v. Acker, Merrall & Condit Co.*,
   18 N.Y.3d 940 (2012) ...................................................................................... 19

*Koch v. Greenberg*,
   14 F. Supp. 3d 247 (S.D.N.Y. 2014) ................................................................. 4

*Kommer v. Ford Motor Co.*,
   No. 17-CV-0296, 2018 WL 3727353 (N.D.N.Y. Aug. 6, 2018) ........................... 23

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .......................................................................................... 3

*M&T Mortg. Corp. v. Miller*,
   323 F. Supp. 2d 405 (E.D.N.Y. 2004) ............................................................... 24

*Mancuso v. RFA Brands, LLC*,
   454 F. Supp. 3d 197 (W.D.N.Y. 2020) ............................................................ 4, 5

*Mantikas v. Kellogg Co.*,
   910 F.3d 633 (2d Cir 2018) ............................................................................. 22

*Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*,
   52 F. Supp. 3d 601 (S.D.N.Y. 2014) ................................................................. 15

*Minner v. Navient Corp.*,
   No. 18-cv-1086S, 2020 WL 906628 (W.D.N.Y. Feb. 25, 2020) ....................... 13, 14

*Morrell v. WW International, Inc.*,
   551 F. Supp. 3d 173 (S.D.N.Y. 2021) ..................................................... 4

*Morrow v. Ann Inc.*,
   No. 16-CV-3340 (JPO), 2017 WL 363001 (S.D.N.Y Jan. 24, 2017) ......................... 5

*Myun-Uk Choi v. Tower Research Cap. LLC*,
   890 F.3d 60 (2d Cir. 2018) ................................................................ 16

*Nabisco Brands, Inc. v. Gen. Restoration Co., Inc.*,
   679 F. Supp. 264 (W.D.N.Y. 1988) ......................................................... 12

*Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*,
   392 F.3d 520 (2d Cir. 2004) ............................................................... 15

*O'Neill v. Standard Homeopathic Company*,
   346 F. Supp. 3d 511 (S.D.N.Y. 2018) ...................................................... 4

*Orlander v. Staples, Inc.*,
   802 F. 3d 289 (2d Cir. 2015) ...................................................... 7, 11, 14, 19

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
   85 N.Y. 2d 20 (1995) ...................................................................... 23

*OTG Brands, LLC v. Walgreen Co.*,
   No. 1:13-CV-09066 ALC, 2015 WL 1499559 (S.D.N.Y. Mar. 31, 2015) ....................... 10

*Price v. L'Oreal USA, Inc.*,
   No. 17 Civ. 614 (LGS), 2020 WL 4937464 (S.D.N.Y. Aug. 24, 2020) ....................... 14

*Quintanilla v. WW Int'l, Inc.*,
   541 F. Supp. 3d 331 (S.D.N.Y. 2021) .................................................. 4, 5, 7

*Ross v. Louise Wise Servs., Inc.*,
   8 N.Y.3d 478 (2007) ...................................................................... 25

*Spiro v. Healthport Techs., LLC*,
   73 F. Supp. 3d 259 (S.D.N.Y. 2014) ....................................................... 18

*Sprentall v. Beacon Health Options, Inc.*,
   No. 20 Civ. 1703 (PGG), 2021 WL 1063392 (S.D.N.Y. Mar. 19, 2021) ...................... 12

*Stanley v. Direct Energy Servs., LLC*,
   466 F. Supp. 3d 415 (S.D.N.Y. 2020) ............................................... 19, 21, 24

*Stapleton v. Barrett Crane Design & Eng'g*,
   725 F. App'x 28 (2d Cir. 2018) ........................................................... 14

*Tapinekis v. Pace Univ.*,
No. 20-CV-3210, 2022 WL 1084750 (S.D.N.Y. Apr. 11, 2022) ............................................ 11

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ..................................................................................................... 3

*Turk v. Rubbermaid Inc.*,
No. 21-CV-270 (KMK), 2022 WL 836894 (S.D.N.Y. Mar. 21, 2022) ...................... 19, 20, 24

*Wai Chu v. Samsung Electronics America, Inc.*,
No. 18-cv-11742-GHW, 2020 WL 1330662 (S.D.N.Y. Mar. 23, 2020) ............................. 7, 8

*Wallace v. Health Quest Systems, Inc.*,
No. 20 CV 545 (VB), 2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) ............................... 10, 11

**Statutes**

N.Y. Gen. Bus. Law § 349 .............................................................................................. passim

**Rules**

Fed. R. Civ. P. 12 (g)(2) ...................................................................................................... 20

N.Y. CPLR § 214(2) ……………………………………………………………………….23

## I. INTRODUCTION

Tether,[1] the company behind USDT—the world's largest "stablecoin"—has sold consumers a lie. Since its founding, Tether has sought to distinguish itself by marketing USDT to consumers as the only "stablecoin" backed by and redeemable for actual U.S. dollars, which it holds in "reserve." *See* Compl., ¶¶ 2-3. Tether repeatedly reiterated this claim throughout the Class Period including on its website (*id.* ¶¶ 3, 71, 77, 102), in social media postings (*id.* ¶¶ 3, 78, 94, 107), and in public statements (*id.* ¶¶ 52, 80, 103, 105). Doubling down on these representations, it sought to gain consumer trust and confidence by touting the results of so-called third-party "audits" that purportedly proved it actually held U.S. dollars in reserve equal or above the amount of USDT it created. *Id.* ¶¶ 76, 77, 79, 88-93, 100. Plaintiffs, like other class members, trusted Tether and relied on these representations in choosing to purchase more than *69 billion* of USDT collectively. *Id.* ¶ 133.

But Tether's claims were false. Tether paid $59.5 million in penalties after two separate regulatory agencies, the New York State Attorney General ("NYSAG") and the United States Commodity Futures Trading Commission ("CFTC") found that it fundamentally misrepresented the nature of USDT and did not maintain the dollar reserves it claimed. *Id.* ¶¶ 116-19, 120-27. As the NYSAG's damning investigation revealed, far from parking dollars in a savings account to back USDT, Tether engaged in a shell game, moving money in and out of accounts controlled by its founders—just before and after the third-party "audits" it promoted—to give the appearance that it held sufficient reserves. *Id.* ¶¶ 96, 108-09, 113-16. In reality, Tether holds cash sufficient to back less than 4% of USDT (*id.* ¶ 6), using the money that supposedly gives this "stablecoin"

---

[1] "Tether" refers to all Defendants named in the Class Action Complaint. *See* Class Action Complaint, ECF No. 1 ("Compl."), ¶¶ 19-22; 32-34.

its appeal for risky loans to large Chinese companies, and cryptocurrency ventures that pay in Bitcoin. *Id.* ¶ 137. While this may result in greater profits for Tether, it violates the promises Tether made and creates a risk that USDT consumers did not bargain for in purchasing a "stablecoin."

Significantly, Tether's misconduct continues to this day. While it has gradually sought to soften its claim that USDT is backed "1-to-1, by traditional currency" (*id.* ¶¶ 71, 77) (i.e., "U.S. dollars" (*id.* ¶ 79))—now stating that it holds reserves "which include traditional currency and cash equivalents" (*id.* ¶¶ 110-11)—no amount of qualification is sufficient as Tether continues to market USDT to consumers under the same dollar-backed narrative that the NYSAG and CFTC exposed as false. *Id.* ¶¶ 116-19, 120-27. This Court can, and should, enjoin Tether from continuing to mislead consumers and to issue corrective disclosures, including regarding the nature of its reserves, so that they can make an informed decision about whether to buy or sell this product.

Tether seeks to avoid liability for its deceit by claiming that its unlawful conduct—which it tellingly does not deny—somehow did not result in injury. *See* Mem. of Law in Supp. of Defs.' Mot. to Dismiss, ECF No. 30 ("Defs. Br.") at 7. This argument fails as it ignores years of precedent, which clearly states that when a company misrepresents the quality and nature of its products—as Tether did here—consumers suffer an injury at the time of purchase where they would not have bought or paid less for those goods had they known the truth. *See* Section II(A)(1), below.

Nor can Tether escape responsibility for its misconduct by claiming that it lacks privity or a sufficiently close relationship (Defs. Br. at 9-11) to Plaintiffs and Class members who purchased USDT governed directly by a set of terms and conditions *Tether created*. ¶¶ 22, 125. This, along with Tether's direct role in the creation, marketing, and sale of USDT, creates a relationship sufficient to support Plaintiffs' contract and unjust enrichment claims. *See* Section II(C), below.

Doomed by its pervasive misrepresentations, Tether does not even attempt to argue that it did not engage in deceptive or misleading conduct targeted at consumers in challenging Plaintiffs' claims under § 349 of New York's General Business Law ("GBL"). While this telling concession is enough to deny Tether's motion, its argument that Plaintiffs have failed to sufficiently allege injury or causation by not specifying which of the many misrepresentations they came across before purchasing USDT is wrong, as this is not the standard applied in *omissions* cases. Defs. Br. at 12. Indeed, Tether simply ignores that Plaintiffs' claims are based in part on its failure to disclose critical information to consumers in attempting to shoehorn them into this heighted pleading standard. The Court should not fall for this tactic. Tether's labeling of USDT as a "stablecoin" is itself false and misleading. No more specific allegations are required.

For these reasons and those discussed herein, Tether's Motion should be denied.

## II. ARGUMENT

### A. Plaintiffs Plausibly Allege Article III Standing

To establish Article III standing at the pleading stage, a plaintiff must allege: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Where, as here, a challenge to Plaintiffs' standing is based on the pleadings, "the plaintiff has no evidentiary burden" (*Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)) and a court must "accept[] as true all material [factual] allegations of the complaint and draw[] all reasonable inferences in favor of the plaintiff." *Id.* at 57 (internal

citation omitted). Tether does not challenge, and therefore concedes, Plaintiffs' ability to satisfy the second and third elements of Article III standing.[2]

### 1. Plaintiffs Sufficiently Plead Injury-in-Fact

The Second Circuit has "repeatedly described" the injury-in-fact requirement as "a low threshold." *John v. Whole Foods Market Group, Inc.*, 858 F.3d 732, 736 (2d Cir. 2017). There is "no [] dispute[] that overpaying for a product results in a financial loss constituting a particularized and concrete injury in fact." *Id.*; *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 203 (W.D.N.Y. 2020) (A "quintessential injury-in-fact can occur when plaintiffs allege that they spent money that, absent defendant's actions, they would not have spent."); *see also Morrell v. WW International, Inc.*, 551 F. Supp. 3d 173, 181 (S.D.N.Y. 2021) (holding a plaintiff alleges "economic injury" sufficient to demonstrate Article III standing by alleging "he would not have made the initial payment . . . had he been aware of the misrepresentation"); *O'Neill v. Standard Homeopathic Company*, 346 F. Supp. 3d 511, 525 (S.D.N.Y. 2018) (finding injury-in-fact where plaintiffs purchased a product that was misrepresented as safe).

Here, Plaintiffs meet this requirement and plausibly allege an Article III injury-in-fact by pleading that they would not have purchased or paid as much for USDT had they known Tether's representations—including its unfounded claim that USDT was a "stablecoin" backed 1:1 by U.S. dollars or any form of currency—were false. Compl. ¶¶ 8, 166, 175, 186, 198. *See, e.g.*, *Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 340 (S.D.N.Y. 2021) (finding an Article III injury where plaintiffs allege as a result of defendant's misrepresentations they "paid more for [a product] than

---

[2] Nonetheless, Plaintiffs' allegations regarding the specific misrepresentations and omissions Tether made throughout the Class Period in falsely promoting, marketing, and selling USDT (Compl. ¶¶ 71, 76, 77) and the resulting harm to Plaintiffs, Compl. ¶¶ 12-13, 17-18, independently satisfy the traceability and redressability requirements. *See Koch v. Greenberg*, 14 F. Supp. 3d 247, 278 (S.D.N.Y. 2014) (finding punitive and compensatory damages appropriate where defendant made affirmative misrepresentations about wine that was "not what it was purported to be.").

they otherwise would have paid, or bought it when they otherwise would not have done so."); *Morrow v. Ann Inc.*, 16-CV-3340 (JPO), 2017 WL 363001, at *3 (S.D.N.Y Jan. 24, 2017) (same).

Tether's argument (Defs. Br. at 7) that Plaintiffs are required to plead a diminution in the value of USDT in order to establish Article III standing is wrong. Courts in this Circuit consistently find allegations that a plaintiff received a product they would not have purchased or paid as much for absent defendant's misrepresentations or omissions sufficient to establish a concrete injury-in-fact at the pleading stage. *See, e.g., Morrow*, 2017 WL 363001, at *3 (finding concrete injury sufficient for Article III standing even though "Plaintiffs do not allege [] that the merchandise was worth less than the price they actually paid for it."); *Quintanilla*, 541 F. Supp. 3d at 341 (finding concrete injury through allegations plaintiff would not have purchased product, despite defendant's argument that the product maintained the same value); *Mancuso*, 454 F. Supp. 3d at 202-03 (rejecting argument that Article III standing requires a plaintiff to "set forth what he paid, or the difference between what he actually paid and what he reasonably would have paid for [the product]").[3] Proof that the product at issue is worth less, that it declined in value, or that plaintiffs lost money (e.g., in connection with an actual or attempted sale) is simply not required. *Morrow*, 2017 WL 363001, at *3; *see also Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 464 (S.D.N.Y. 2020) ("[t]here is no requirement that Plaintiff specify the exact amount of the price premium that he paid, or a comparable product.").

---

[3] Tether's citations to what it claims to be the historical price charts for USDT (Defs. Br. at 4) have no bearing on whether Plaintiffs have Article III standing or damages for the reasons described herein. This argument should separately be rejected because it relies on extrinsic evidence that is not part of the pleadings and not subject to judicial notice as it concerns "facts" regarding the price of USDT and its purported "peg" to the dollar that are in dispute. *See Ebin v. Kangadis Food, Inc*., No. 13 Civ. 2311 (JSR), 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2003) (rejecting defendant's "price chart" included in motion to dismiss because it "contravenes the rule that 'in deciding a motion to dismiss, the Court must limit its analysis to the four corners of the complaint"). The documents are also inaccurate as they omit USDT's recent drop to below $1. *See* Exhibit A to Decl. of Amanda G. Fiorilla in Supp. of Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Fiorilla Decl.").

Tether ignores these cases and instead relies on inapposite decisions dealing with claims for recission under the PSLRA and the Securities Act in the hopes of imposing a loss causation requirement here. *See* Defs. Br. at 7 (citing *Holsworth v. BProtocol Found.*, No. 20 Civ. 2810, 2021 WL 706549, at *2 (S.D.N.Y. Feb. 22, 2021) (finding the complaint "is silent on the point of injury" and a claim for recission cannot exist without "up to date" allegations of price); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 381 F. Supp. 2d 192, 244-46 (S.D.N.Y. 2004) (finding no standing in Securities and ERISA litigation because "the allegations . . . reveal that [the] bonds purchased by Lead Plaintiff have actually increased in value.")). But these statutes do not apply in this action: not only is Tether *not* a security, but Plaintiffs' claims do not implicate either the PSLRA or Securities Act, making their statutory pleading requirements irrelevant.

Lastly, Tether's benefit of the bargain argument—i.e., that Plaintiffs do not have standing because in purchasing USDT they received something worth roughly what they paid (Defs. Br. at 8)—is nothing more than the flip side of its diminution in value argument and fails for the same reason. *See* Section II(A)(1), above. Indeed, under Tether's reasoning, a consumer could never have standing to sue based on even the most blatant misrepresentations or omissions (like those alleged here) unless the market price for the product at issue (which is often set by the defendant making the misrepresentation or omission) fell in response to a corrective disclosure. However, as with Tether's other attempts to borrow loss causation principles from securities law, consumer cases have uniformly rejected this construct, focusing on whether the plaintiff has identified a misrepresentation or omission "likely to mislead a reasonable consumer acting reasonably under the circumstances" and alleged that they "would not have purchased [the product] had [they] known" the misrepresentation was false, instead of the market price. *Orlander v. Staples, Inc.*, 802 F. 3d 289, 300 (2d Cir. 2015); *see also Quintanilla*, 541 F. Supp. 3d at 341.

Nor can Tether escape liability by downplaying the egregious nature of the misrepresentations and omissions made regarding USDT. Tether did not, as it claims, merely promise that it would sell USDT that would have a value of $1.00 (Defs. Br. at 8), but repeatedly marketed USDT as a "stablecoin" having multiple features that, in fact, it did not, including: (1) an equal number of U.S. dollars in reserve at all times for every USDT issued (Compl. ¶¶ 75, 79-80); (2) a 1:1 "peg" to the U.S. dollar (*id.* ¶¶ 2, 77, 79-80); and (3) transparency provided by routine third-party audits, regarding USDT's backing and Tether's reserves. *Id.* ¶¶ 3, 7, 95, 101, 129, 181. Two regulators have now uncovered evidence demonstrating these promises were false following extensive investigations of Tether. *Id.* ¶¶ 5, 26, 81, 116-19, 120-27. Plaintiffs, as USDT purchasers, are the victims of this misconduct have standing to pursue their claims.

### B. Plaintiffs Have Standing to Pursue Declaratory and Injunctive Relief

Article III standing to pursue injunctive relief requires a plaintiff to establish a "real or immediate threat of injury." *Wai Chu v. Samsung Electronics America, Inc.*, No. 18-cv-11742-GHW, 2020 WL 1330662, at *4-5 (S.D.N.Y. Mar. 23, 2020). Plaintiffs allege that Tether ***continues*** to actively misrepresent that USDT is a "stablecoin" pegged to the value of the dollar that is backed 1:1 by "reserves" in "traditional currency and cash equivalents." Compl. ¶¶ 71, 129-139. But these statements are false as Tether's holdings consist *not* of U.S. dollars, or cash in any other currency, but (at best) of risky Chinese commercial paper investments and Bitcoin received as collateral for loans to cryptocurrency companies. *Id.* ¶¶ 137. Tether has done nothing to address these misstatements and continues to market USDT based on the same claims, which are "not remotely credible" (*id.* ¶ 132) as they would make Tether the seventh largest holder of commercial paper in the world (*id.* ¶ 133), an impossible feat given that none of the banks that deal in this space have relationships with Tether. *Id.* ¶134-35. Further, Tether continues to issue new public statements that are deceptive and misleading, for example, stating in a May 16, 2022 tweet that

USDT's "peg [to the dollar] was actually never broken," (Exhibit B to Fiorilla Decl.) when its price had clearly declined below that level. *See* Exhibit A to Fiorilla Decl. Accordingly, injunctive relief is appropriate here to prevent Tether from making further misrepresentations about USDT.

Tether's argument that Plaintiffs do not have standing to seek injunctive relief because they are "past purchasers" who would not "purchase the product again" is incorrect. Defs. Br. at 8. Nowhere in the Complaint do Plaintiffs allege that they would never purchase USDT in the future, only that they would not have purchased USDT in the past had they known at the time that Tether's representations were false. *See* Compl. ¶¶ 166, 186, 198. As Plaintiffs have not disclaimed any future purchases, they have standing to pursue injunctive relief to address Tether's continued misrepresentations and omissions about USDT, because those false statements present an ongoing risk of harm to Plaintiffs. *Wai Chu*, 2020 WL 1330662, at *4-5 (explaining "Plaintiffs have standing to pursue both damages and injunctive relief" because "a proper inference this Court might draw from Plaintiffs' complaint is that in the future, Samsung may produce a product with a new type of screen that also uses false pixels" and "[i]f Plaintiffs purchased those [products] . . . they will be injured").

Tether's reliance on *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020) is misplaced and only highlights this distinction. Defs. Br. at 8. In *Berni* the Court held that past purchasers of Barilla pasta, who claimed the boxes were underfilled, lacked standing to pursue an injunction requiring Barilla to add "[a] 'fill-line' or some disclaimer language" to its packaging because those changes would not "materially improve their position as knowledgeable consumers" since they

had alleged they would never purchase Barilla pasta again.[4] *Id.* That reasoning simply does not apply here where there is no such allegation.

However, *Berni* is instructive on a separate point that further undermines Tether's argument. In deciding whether injunctive relief was appropriate, the *Berni* court considered whether the plaintiffs' request—i.e., fill lines and disclaimer language—would actually address the harm alleged—i.e., underfilled pasta boxes. *Id.* at 149. The court concluded that the injunction was unnecessary because making those changes would neither: (1) stop pasta boxes from being underfilled, or (2) provide customers with any more ammunition to detect underfilled pasta boxes as the "next time they buy [the product] they will be doing so with exactly the level of information that they claim they were owed from the beginning." *Id.* at 148. The same is not true here, where Plaintiffs seek an injunction requiring the disclosure of information about USDT that remains exclusively in Tether's control.

Accordingly, Tether's motion to dismiss Plaintiffs' claim for injunctive relief for lack of standing should be denied.

### C. Plaintiffs State Contract Claims

Under New York law a contract may be express or implied. *See OTG Brands, LLC v. Walgreen Co.,* No. 1:13-CV-09066 ALC, 2015 WL 1499559, at *6 (S.D.N.Y. Mar. 31, 2015) (contracts can be created expressly or implied in fact). In either case, a breach of contract claim requires: (1) the existence of a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages. *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 760 (W.D.N.Y. 2017); *see also Wallace v. Health Quest Systems, Inc.*, No. 20 CV 545 (VB), 2021 WL

---

[4] This same distinction can be drawn in the other cases cited by Tether. *See* Defs. Br. at 8 (citing *Brown v. Kellogg Sales, Co.*, No. 1:20-CV7283, 2022 WL 992627, at *6 n.3 (S.D.N.Y. Mar. 31, 2022) and *Campbell v. Whole Foods Mkt. Grp.*, 516 F. Supp. 3d 370, 395-96 (S.D.N.Y. 2021)).

1109727, at *10 (S.D.N.Y. Mar. 23, 2021) ("Under New York law, the elements required to allege a breach of implied contract are identical to those necessary to allege a breach of contract"). Plaintiffs sufficiently allege each of these elements here.

As to the existence of a contract, Tether created an agreement with Plaintiffs and Class members in at least two ways. *First*, Tether issues USDT pursuant to an express set of terms and conditions that govern its creation, use, redemption and destruction, in addition to its features. *See* ¶¶ 22, 25, 91. Those terms necessarily apply to Plaintiffs, who as purchasers of USDT may only use or redeem (they cannot create or destroy) USDT as allowed by Tether. *Id.*

*Second*, in addition to these express terms, Tether created a contract through its conduct by making express promises to Plaintiffs and Class members that it would take on certain obligations, including placing $1 in its reserves for each USDT created, and that it would undergo routine, third-party audits to validate those reserves, among other things. Compl. ¶¶ 177-87; *see also Einhorn v. Mergatroyd Productions*, 426 F. Supp. 2d 189, 193 (S.D.N.Y. 2006) (explaining an offer does not require any particular form, it simply requires "conduct that would lead a reasonable person in the other party's position to infer a promise in return for performance."). Plaintiffs accepted Tether's offer by purchasing USDT and reasonably expected Tether to uphold its end of the bargain and fulfill these obligations. Compl. ¶ 182.

Tether breached its contract with Plaintiffs by failing to honor its part of the bargain. Contrary to Tether's representations, it does not hold in reserve U.S. dollars or any "traditional currencies" sufficient to back USDT 1:1, provide for dollar redemptions under the contract, or ensure a "peg" to the value of the U.S. dollar as it has repeatedly claimed. *Id.* ¶¶ 2, 75, 77, 79-80, 196. Nor has it undergone a comprehensive audit to validate those reserves as promised. *Id.* ¶¶ 6, 76-79, 86, 196. Each of these misrepresentations are material, as they go to fundamental features

of USDT, and constitute a breach of the contract Tether created with Plaintiffs. This breach damaged Plaintiffs, who would not have purchased, or would have paid significantly less, for USDT had they known Tether's representations were false. Compl. ¶ 186; *see also Orlander*, 802 F.3d at 299-302 (allegations that plaintiff lost benefit of the bargain because the service he purchased was not what it purported to be was sufficient to plead damages in contract); *Wallace*, 2021 WL 1109727, at *6 (same).

Tether's claim that Plaintiffs fail to allege a contract has no merit. Defs. Br. at 10. Unlike in *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008), where the plaintiff made only "vague and conclusory allegations" about the existence of a contract and whether it was valid (*id.* at 208) or *Tapinekis v. Pace Univ.*, No. 20-CV-3210, 2022 WL 1084750, at *2 (S.D.N.Y. Apr. 11, 2022), where plaintiff could not meet the monetary threshold for subject matter jurisdiction by claiming some unidentified contractual provisions were breached, Plaintiffs here plead the precise details of when they allege to have entered a contract with Tether, the basis for that contract, what the parties agreed to, and how it was breached. Compl. ¶ 177-83, 190-92. Nothing more is required.

Nor can Tether disclaim liability for its contractual breach by arguing the parties lack "privity." Defs. Br. at 10. Contrary to Tether's motion, Plaintiffs are not required to have purchased USDT directly from Tether to establish privity sufficient to support a breach of contract claim. *Impulse Mktg. Grp., Inc. v. Nat'l Small Bus. Alliance, Inc.*, No. 05-CV-7776 (KMK), 2007 WL 1701813, at *6 (S.D.N.Y. June 12, 2007) ("privity of contract . . . mean[s] '[t]he relationship between the parties to a contract."); *id.* ("The Second Circuit has held that 'the existence of a contract may be established through conduct of the parties recognizing the contract."). Rather, whether privity exists turns on the parties' "actions and words," including whether a party took on obligations and responsibilities, or held itself out as performing the stated services, and received

proceeds or a benefit in return. *Id.* (finding privity because defendant "played a considerable role in the management and performance of the Contract," the parties interests were aligned, and payment was exchanged between the parties); *see also Gill v. Nat'l Football League*, No. 21 Civ. 1032 (PAE), 2021 WL 5087900 (S.D.N.Y. Nov. 2, 2021) (denying motion to dismiss contract claim for lack of privity because complaint alleged that defendant had advertised it was "currently offering" the product, creating factual dispute); *Sprentall v. Beacon Health Options, Inc*., No. 20 Civ. 1703 (PGG), 2021 WL 1063392, at *5 (S.D.N.Y. Mar. 19, 2021) (rejecting insurance administrator's lack of privity argument because they are the entity responsible for "process[ing] and handl[ing] claims" under the insurance agreement); *Gaddy v. Eisenpress*, No. 99 Civ. 3781, 1999 WL 1256242, at *4 (S.D.N.Y. Dec. 27, 1999) (rejecting lack of privity argument because, despite lack of a formal agreement, defendant has assumed certain obligations, appeared at meetings, and billed plaintiff for the services provided); *Nabisco Brands, Inc. v. Gen. Restoration Co., Inc*., 679 F. Supp. 264, 266 (W.D.N.Y. 1988) (finding genuine issue of fact whether privity existed between owner and subcontractor, where 90% of the total payment obligation was paid to subcontractor, subcontractor had "active involvement," and was responsible for "all of the obligations" under the contract).

As in the examples above, Tether played an active (indeed exclusive role) in the creation of USDT and management of all related functions, including marketing and advertising USDT as having certain attributes, creating the terms and conditions that would govern the creation, use, redemption, and destruction of USDT, outlining Tether's obligations to maintain U.S. dollar and "traditional currency" reserves, and Plaintiffs reciprocal obligations as USDT purchasers. Compl. ¶¶ 2, 22-25, 91. Tether benefits from this by receiving the proceeds from USDT sales. *Id.* ¶ 203;

*see also* ¶ 80 (stating in a federal court filing that Tether receives "customer dollars" that are "held by Tether"). This sufficiently alleges privity between Plaintiffs, as USDT purchasers, and Tether.

The existence of a purported "exchange" that facilitates the purchase of USDT does not change this analysis. Defs. Br. at 10. Tether's argument ignores that the purported "exchanges" at issue here merely facilitate the transfer of USDT and do not set the contractual terms of Plaintiffs' or Tether's obligations, parameters or features of USDT, or control Tether's representations about the quality and nature of its reserves. Compl. ¶ 22 (explaining Tether determines who can and cannot purchase USDT); ¶ 27 (explaining it is Tether that allows USDT to be listed on exchanges); ¶ 79 (explaining Tether controls their "Proof of Reserves" configuration). Those promises are created by Tether, and the relationships and obligations set forth by the contract run directly to Plaintiffs and other USDT purchasers.

Regardless, Plaintiffs have at a minimum sufficiently alleged the "functional equivalent" of privity with Tether such that they can pursue contract claims. *Minner v. Navient Corp.*, No. 18-cv-1086S, 2020 WL 906628, at *13 (W.D.N.Y. Feb. 25, 2020) (explaining the functional equivalent of privity exists when (1) the agent is "engaged on behalf of" the principal, (2) "for the benefit of" the principal," and (3) "with the knowledge of all parties."). The determination of "whether the functional equivalent of privity exists is highly fact dependent and turns on the dealings between the relevant parties." *Id.* (finding the functional equivalent of privity existed between a loan servicer and plaintiff, despite not being party to the contract, because loan servicer provided information and instructions regarding plaintiff's loans). Here, the "exchanges" where Tether sells USDT, operate only to facilitate a transaction among the true parties to the agreement, i.e., Tether, as the creator of USDT, and consumers like Plaintiffs, that pay to purchase its products.

The benefits of this arrangement inure solely to Tether, which collects customer dollars in connection with USDT sales. Compl. ¶¶ 80, 203.

This is nothing like *Price v. L'Oreal USA, Inc.*, No. 17 Civ. 614 (LGS), 2020 WL 4937464, at *12 (S.D.N.Y. Aug. 24, 2020) (*see* Defs. Br. at 10), which found at summary judgment, that plaintiffs, seeking to enforce a contract between the manufacturer of a product and its retailers, failed to adduce "any evidence of privity" between themselves and defendants under the third party beneficiary theory.[5] If anything *Price* only confirms that Tether's motion should be denied given the fact-intensive nature of the privity analysis and Plaintiffs given the opportunity for discovery (as in that case) to develop the factual nature of this relationship.

Lastly, Tether's argument that Plaintiffs fail to allege damages is a red herring. Defs. Br. at 9. As described above, a plaintiff who contracts for a product or services, and receives something different from what they bargained for, is entitled to damages. *See Orlander v. Staples, Inc.*, 802 F. 3d at 299-02 (holding allegations that plaintiff lost benefit of the bargain because the service he purchased was not what it purported to be are sufficient to plead contract damages). The cases cited by Tether do not dispute this principle and are incompatible with the facts here. *See* Defs. Br. at 9 (citing *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004) (finding evidence adduced at trial was sufficient to show that plaintiffs damages were a result of intervening conduct rather than that of defendant); *Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*, 52 F. Supp. 3d

---

[5] The remaining cases cited by Tether are equally distinguishable from the circumstances here. *See* Defs. Br. at 11 (citing *Everlast World's Boxing Headquarters Corp. v. Trident Brands, Inc.*, No. 19-CV-503 (JMF), 2020 WL 917058, at *4 (S.D.N.Y. Feb. 26, 2020) (holding "unambiguous provision" in the contract stating that ***solely the parent company was "responsible"*** for all acts and omissions of its subsidiary was "***fatal***" to contract claim against the subsidiary); *Stapleton v. Barrett Crane Design & Eng'g*, 725 F. App'x 28, 31-32 (2d Cir. 2018) (holding at summary judgment that there was no privity or functional equivalent because there was no "no evidence that [the defendants] ***were even aware*** of the Master Agreement, much less intended to be bound by it.") (emphasis added).

601, 611 (S.D.N.Y. 2014) (assuming that the contractual term breached was record keeping function, there were no allegations to suggest this breach caused damages)).

### D. Plaintiffs State a Claim for Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must allege: (1) the "defendant was enriched"; (2) "the enrichment was at plaintiff's expense"; and (3) "the circumstances were such that equity and good conscience require defendant[] to make restitution." *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 472 (E.D.N.Y. 2013) (internal citation omitted).

Plaintiffs here plausibly allege each of these elements by pleading that Tether was unjustly enriched from sales of USDT made while actively misrepresenting that USDT was a "stablecoin" backed "one-to-one by the U.S. dollar, i.e., customer dollars held by Tether" (*see, e.g.*, Compl. ¶¶ 80, 96) or by "sufficient reserves" in "traditional currency" (*id.* ¶¶ 3, 51, 67, 71), among other things. *See Hughes*, 930 F.Supp.2d at 472 (holding "plaintiffs clearly allege the defendants were unjustly enriched" by alleging defendant engaged in deceptive conduct resulting in the sale of its product); *Cox v. Microsoft Corp.*, 8 A.D.3d 39, 41 (N.Y. 1st Dep't 2004) (holding "allegations that [a company's] deceptive practices caused [plaintiffs] to pay artificially inflated prices for its products state a cause of action for unjust enrichment."). Tether obtained revenue from these sales and used these ill-gotten gains to profit ***even more*** by operating a "high-risk offshore hedge fund," investing the money in risky Chinese commercial paper and other cryptocurrency ventures, instead of holding these funds as U.S. dollars reserves as promised.

Tether is incorrect in arguing that Plaintiffs cannot maintain an unjust enrichment claim because they purchased USDT from "unidentified parties" on an "exchange." Defs. Br. at 11. *First*, there is no indication that this factual contention is true. Just the opposite, it is plausible any USDT purchased would have come from Tether who, as the only one able to create USDT, would have been its exclusive supplier to the market. *See* Compl. ¶ 22. Beyond that, given the nature of the

15

blockchain (*id.* ¶¶ 58-61), the exact identity of who Plaintiffs purchased Tether from is a fact question for discovery that cannot be resolved on this motion and thus should not defeat their unjust enrichment claim. *In re Canon Cameras Litig.*, No. 05 Civ. 7233, 2006 WL 1751245, at *2 (S.D.N.Y. June 23, 2006) (sustaining unjust enrichment claim because questions "of fact [are] not properly resolved on a motion to dismiss.").

*Second*, even if Plaintiffs did not deal directly with Tether, their unjust enrichment claims should still proceed. Contrary to Tethers' argument, New York law does not limit unjust enrichment claims to a plaintiff's direct counterparties. *See Cox,* 8 A.D.3d at 41 (rejecting argument that an "indirect purchaser" cannot bring an unjust enrichment claim because defendant's "deceptive practices caused [plaintiff] to pay artificially inflated prices."); *Hughes*, 930 F. Supp. 2d at 471 ("Under New York law, unjust enrichment does not require a direct relationship between the parties."); *Myun-Uk Choi v. Tower Research Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018) ("[A] New York unjust enrichment claim requires no 'direct relationship' . . . [r]ather, the requirement of a connection between plaintiff and defendant is a modest one."). Rather, a plaintiff may pursue an unjust enrichment cause of action against anyone enriched as a result of the alleged misconduct. *Hughes*, 930 F.Supp.2d at 471. Here, Plaintiffs meet this requirement by pleading that Tether's direct role in creating USDT and its ongoing misrepresentations regarding the promotion of USDT as a "stablecoin" backed by dollar reserves, resulted in ill-gotten gains in the form of proceeds from Plaintiffs' and Class members' purchases that otherwise would not have accrued, as well as additional profits when Tether failed to place these funds in reserves held in U.S. dollars (as promised) and instead used them to make risky investments. *See* Compl. ¶¶ 10-11, 15-16, 78-80.

Tether's direct role and, in fact, exclusive control over all aspects of USDT distinguishes this case from the "attenuated" relationship among parties found insufficient in *Georgia Malone & Co., Inc. v. Rieder*, 973 N.E.2d 743, (N.Y. 2012). There, the plaintiff, a real estate brokerage firm brought an unjust enrichment claim against a competitor—with whom it had no relationship—but happened to obtain due diligence materials regarding a potential commercial property from a third party that disclosed the materials to the competitor without stating that they were confidential or unpaid for. The *Rieder* plaintiffs' claims failed because there was nothing unjust about the competitors conduct: it had not sought to gain an undue advantage and was never told that the information being provided was confidential or misappropriated from another firm. *Id.* at 748. By contrast, here Tether has not only misrepresented, but continues to misrepresent, the true nature of USDT, using those misrepresentations to promote a product for sale to consumers that purports to have features it does not—clearly the kind of unjust conduct the law is intended to address. *Cox,* 8 A.D.3d at 41 (reversing dismissal of unjust enrichment claim by indirect purchasers who paid more than they otherwise would have due to defendant's misrepresentations).

Nor is this case anything like *In re N. Sea Brent Crude Oil Futures Litig.*, 256 F. Supp. 3d 298, 316 (S.D.N.Y. 2017), where a group of investors who purchased NYMEX crude oil contracts priced based on West Texas Intermediate ("WTI") crude alleged that a group of foreign entities who traded physical Brent crude oil in the North Sea were unjustly enriched at the plaintiffs' expense by the alleged manipulation of the benchmark price of Brent crude oil. As the *Brent* court explained, plaintiffs' claims failed not because they did not deal directly with the defendants, but because the defendants were alleged to have traded *a different commodity* (i.e., Brent crude oil) *in a different market* from the plaintiffs such that it was not plausible that they would have been unjustly enriched as a result of the alleged manipulation. *Id.* at 301, 303 316. The exact opposite

is true here, where Tether is not only alleged to have supplied the market with the same USDT Plaintiffs purchased, but to have benefited from the associated misrepresentations and omissions as a result. *See* Compl. ¶¶ 202.

Lastly, Tether's claim that Plaintiffs fail to allege Tether was "enriched *at all*" (Defs. Br. at 11) ignores Plaintiffs' allegations that Tether is enriched in several ways, including directly from proceeds of USDT sales (Compl. ¶ 203) and ***further profits*** that accrued as a result of the misappropriation of these funds, which were not put in reserves held in U.S. dollars, but instead used so that Tether could operate a "high-risk offshore hedge fund." Compl. at ¶ 136. The cases Tether cites are readily distinguishable as they involve situations where the defendant received no benefit or proceeds from the alleged misconduct. *See* Defs. Br. at 11 (citing *ASG & C, Inc. v. Arch Specialty Ins. Co.*, No. 21-1761-cv, 2022 WL 839805, at *1 (2d Cir. Mar. 22, 2022) (dismissing claim because there were no funds that went to defendant, as plaintiff never paid their invoice); *Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 275 (S.D.N.Y. 2014) (dismissing unjust enrichment claim because plaintiff failed to allege any proceeds were received by defendant); *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (reversing verdict because there was no evidence any of the funds paid went to defendant)).[6]

### E. Plaintiffs State a Claim Under New York's GBL § 349

To state a claim under Gen. Bus. Law § 349 ("§ 349"), a plaintiff must allege (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the deceptive act or practice. *Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 433 (S.D.N.Y. 2020) (citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940 (2012)). A claim

---

[6] Tether's reliance on *Briarpatch L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) is also misplaced. There, the court did not hold that plaintiff failed to show that defendant was enriched "at plaintiff's expense" but rather that plaintiff's unjust enrichment claim was preempted by the federal Copyright Act. *Id*. There is no analogous statute or preemption issue here.

under the GBL "need not reach the level of common-law fraud to be actionable." *Bildstein v. MasterCard International, Inc.*, No. 03 Civ. 9826I, 2005 WL 1324972 (S.D.N.Y. June 6, 2005).

Plaintiffs allege that Tether engaged in consumer-oriented conduct (a fact Tether does not dispute in its motion) by marketing, advertising, and selling USDT to consumers based on materially misleading representations that USDT was backed 1:1 by reserves in U.S. dollars and that Tether would undergo frequent, robust audits, to confirm those reserve balances and substantiate its claims of being a "stablecoin." *See* Compl. ¶¶ 2, 75-77, 79-80, 196. Tether also failed to disclose, despite its representation to be fully transparent with consumers, that not only did it not maintain "sufficient reserves" (in U.S. dollars or otherwise) throughout the Class Period, but that a majority of its slim holdings were far from "stable" and actually consisted of risky Chinese paper and other investments in cryptocurrency ventures. *See id.* ¶ 137, 160. Plaintiffs and Class members relied on these representations (and omissions) and were injured as a result, because they would not have purchased USDT or would have paid less had they known the truth. *Ebin,* 2013 WL 6504547, at *5 ("the deception is the false and misleading label, and the injury is the purchase price."); *see also Orlander v. Staples, Inc.*, 802 F.3d at 299-300, 301-02 (holding allegations that plaintiff lost benefit of the bargain because the service he purchased was not what it purported to be are sufficient to plead damages under GBL); *Turk v. Rubbermaid Inc.*, No. 21-CV-270 (KMK), 2022 WL 836894, at *8 (S.D.N.Y. Mar. 21, 2022) (holding "a plaintiff can show [] injury by alleging 'an overpayment, or a price premium, whereby a plaintiff pays more than she would have but for the deceptive practice.'"). These allegations sufficiently allege a § 349 claim.

## 1. Tether's GBL Injury Argument Fails

Tether only challenges the third element of Plaintiffs' § 349 claims, arguing that Plaintiffs fail to plausibly allege a cognizable injury under the GBL or sufficiently allege that their injury

resulted from the alleged deceptive conduct because Plaintiffs do not plead with specificity which of Tether's many misrepresentations they saw.[7] Defs. Br. at 12-13. Both of these arguments fail.

As to the injury itself, Tether ignores that a plaintiff who purchases a product as a result of a defendant's deception—whether it be an express misrepresentation or a material omission—is injured upon purchase. *Ebin,* 2013 WL 6504547 ("the deception is the false and misleading label, and the injury is the purchase price."); *Turk,* 2022 WL 836894, at *8 (holding "a plaintiff can show [] injury by alleging 'an overpayment, or a price premium, whereby a plaintiff pays more than she would have but for the deceptive practice.'"). Here, Tether represented that USDT would be backed 1:1 by sufficient reserves of U.S. dollars, and that it would undergo audits to confirm those holdings to be fully transparent about what its reserves contained. As these representations were completely false and misleading, Plaintiffs suffered a § 349 injury equal to the full price they paid for USDT at the time of purchase.

Tether is incorrect to rely on *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 172 A.D.3d 405, 406 (N.Y. 1st Dep't 2019) in arguing Plaintiffs have no cognizable injury because Plaintiffs can still redeem USDT for $1. *See* Defs. Br. at 5. There, plaintiff sued a publisher alleging that it was entitled to damages equal to the full price of a legal treatise because that publication contained errors regarding certain statutes. The court found that plaintiff had failed to allege cognizable injury because there was ***no promise or representation*** in the first place that the book would be error free and, in fact, defendant expressly disclaimed it

---

[7] Tether does not challenge, and therefore concedes the remaining elements of Plaintiffs' § 349 claims, (a) that the conduct at issue is consumer facing and (b) that Defendants' misrepresentations and omissions were materially misleading to consumers. *See In re Customs & Tax Admin. Of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-md-2865 (LAK), 2020 WL 70938, at *2, n.12 (S.D.N.Y. Jan. 7, 2020) (defendant waived any arguments that plaintiff failed to state a claim under Rule 12 (b)(6) by failing to challenge same) (citing FED. R. CIV. P. 12 (g)(2)); FED. R. CIV. P. 12(g)(2) ("except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion").

did not warrant the accuracy, reliability, or currentness of the materials contained therein. *See id.* at 406. The same is not true here, where ***Tether does not even attempt to dispute its misrepresentations***, and two separate regulators have confirmed the false nature of its claims. Moreover, given the NYSAG's and CFTC's findings, the Court should reject this fact-based argument as there is no reason to believe that Plaintiffs *could* redeem their USDT, or that Tether even has the cash on hand to pay its customers as promised.

Plaintiffs' allegations also plausibly establish Tether and its misrepresentations and omissions as the cause of Plaintiffs' injuries. To establish causation based on affirmative misrepresentations, "it is enough for a plaintiff to 'plead the disclosures he or she received were inadequate, misleading, or false, and that she was injured as a result of the insufficient or false disclosures.'" *Stanley* at 435 (quoting *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 446 (E.D.N.Y. 2015). Plaintiffs have done just that, identifying the statements and omissions they allege were false and misleading, including Tether's claim that USDT is a "stablecoin," and the resulting injury they suffered because they would not have purchased or would have paid less for USDT had Tether been truthful.

Tether contends that Plaintiffs have failed to plead causation under § 349 because they did not allege when and where they were made aware of the alleged misrepresentations prior to purchasing USDT. Defs. Br. at 12. This argument fails because Tether's misrepresentations and omissions about USDT appears on the face of the product, i.e., with its labeling of USDT as a "stablecoin" despite knowing that USDT was not "pegged" to the U.S. dollar or backed 1:1 by any currency reserves. *See Ebin,* 2013 WL 6504547 (sustaining GBL claim based on labeling of product as "olive oil" because that term, as "commonly known" by consumers, means from olives that are harvested, crushed, and spun, and what defendant sold was Pomace that did not have these

attributes); *Mantikas v. Kellogg Co.*, 910 F.3d 633, 638-39 (2d Cir 2018) (labeling of a product is "whole grain" leads a "reasonable consumer" to believe the grain content is exclusively or predominately whole grain" and representations elsewhere do not "dispel[]" this belief); *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 461-62 (S.D.N.Y. 2020) (placard reading "Blueberry" and what appears to be pieces of scattered fruit in the product lead a "reasonable consumer" to believe there are blueberries in the product); *Goldemberg v. Johnson & Johnson Consumer Co., Inc.*, 8 F. Supp. 3d 467, 479-80 (S.D.N.Y. 2014) (labeling product as "natural" conveys to consumers the product is natural and not synthetic).[8] As in the prior examples, no further specificity is required to plead causation as Plaintiffs' allege that this labeling was misleading and that they would not have purchased USDT had they know it was not a "stablecoin." *See* Compl. ¶¶ 13, 17 (alleging Plaintiffs believed that USDT were "stablecoin[s]" and would not have purchased had they "known that [USDT] were not truly stablecoin[s].").

The Court should also deny Tether's motion as it completely fails to address that Plaintiffs also allege omission-based claims, which are evaluated under a different standard from those dealing solely with affirmative misrepresentations. *See Catalano v. BMW of North America, LLC*, 167 F. Supp. 3d 540, 562 (S.D.N.Y. 2016) (rejecting requirement that "the complaint [must] identif[y] the specific advertisements or statements alleged to be false or misleading . . . where, as here . . . [plaintiff] primarily relies on an omission-based theory of deception."). "Omission-based claims under Section 349 are appropriate 'where the business alone possesses material information that is relevant to the consumer and fails to provide this information.'" *Bildstein,* 2005 WL 1324972, at *3-4 (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,*

---

[8] In any event, Plaintiffs **do allege** that they "relied on Defendants' deceptive representations and omissions" in purchasing USDT. *See* Compl. ¶¶ 164; *see also Douyon v. N.Y. Med. Health Care, P.C.*, 894 F. Supp. 2d 245, 263 (E.D.N.Y. 2012) (explaining "reasonable inference to be drawn" from allegations that defendant's misleading statements misled plaintiffs is that "Plaintiff saw the [misrepresentations].").

85 N.Y. 2d 20, 26 (1995)); *Cohen v. Northeast Radiology, P.C.*, No. 20CV1202 (VB), 2021 WL 293123, at *9 (S.D.N.Y. Jan. 28, 2021) (same); *Catalano*, 167 F. Supp. 3d at 562 (sustaining GBL claim because defendant had knowledge of material facts, but did not disclose them); *Garcia v. Chrysler Group LLC*, 127 F. Supp. 3d 212, 239 (S.D.N.Y. 2015) (sustaining GBL claims based on omissions); *Kommer v. Ford Motor Co.*, No. 17-CV-0296, 2018 WL 3727353, at *3 (N.D.N.Y. Aug. 6, 2018) (same). *Bildstein* is instructive on this point. There, the court held plaintiffs plausibly alleged an omission-based GBL claim based on allegations that Mastercard had exclusive knowledge that it charged a fee embedded in its conversion rate for foreign currency transactions and withheld that information from consumers. *Bildstein*, 2005 WL 1324972, at *4. As in *Bildstein*, Plaintiffs allege that Tether omitted information in its exclusive control, including that it did not maintain sufficient U.S. dollar or other currency reserves, despite marketing USDT to consumers as a "stablecoin." Indeed, to this day, Tether is the only entity who knows what actually is contained in its reserves despite its promise of transparency. As Tether's persistent marketing of USDT shows, it was well aware that the dollar "peg" and claimed backing by real currency reserves, was important to consumers such that they would not have purchased USDT had they known this information was false. Tether, nonetheless, continued to market and sell USDT without disclosing that it did not have those features. None of the cases cited by Tether address omission-based claims and, therefore, have no bearing here. *See* Defs. Br. at 12-13 (citing *Turk*, 2022 WL 836894, at *8 (alleging claims based on affirmative misrepresentation)); *Himmelstein,* 172 A.D.3d at 406 (same); *Gale v. Int'l Bus. Machs. Corp.*, 9 A.D.3d 446, 447 (N.Y. 2d Dep't 2004) (same).

### 2. Plaintiffs' § 349 Claims are Timely

The statute of limitations for a § 349 claim is three years. *See* N.Y. CPLR § 214(2). However, "[w]here a [GBL] § 349 claim is based on a series of allegedly deceptive acts . . . the 'continuing violations doctrine' applies and 'effectively tolls the limitations period until the date

of the commission of the last wrongful act.'" *Stanley v. Direct Energy Servs., LLC,* 466 F. Supp. 3d 415, 432 (S.D.N.Y. 2020). Additionally, under principles of equity, "a defendant is estopped from pleading a statute of limitations defense if the 'plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *M&T Mortg. Corp. v. Miller*, 323 F. Supp. 2d 405, 411 (E.D.N.Y. 2004) (explaining "equitable tolling" of GBL claims "is available in cases of fraudulent concealment."); *Council v. Better Homes Depot, Inc.*, No. 04CV5620, 2006 WL 2376381, at *12 (E.D.N.Y. Aug. 16, 2006) (finding the statute of limitations for plaintiffs GBL claim was equitably tolled because of defendants' active misrepresentations).

Here, Tether contrived a systemic and ongoing scheme in which it misled Plaintiffs and Class members by misrepresenting and concealing material facts about the true nature of USDT. Shockingly, it continues to do so today, maintaining that USDT is a "stablecoin" backed by sufficient reserves, and that professional, robust audits—promised since 2014—proving its claims are forthcoming, among other things. Each of these representations is false and designed to conceal Tether's continuing wrongdoing and the fact that USDT is not a "stablecoin" and that it does not maintain sufficient reserves to back USDT 1:1 with U.S. dollars or other currency. As Tether continues to deceive Plaintiffs and Class members about the attributes of USDT, the statute of limitations has not even started to run, let alone expired.

Contrary to Tether's insinuation, this is a far cry from merely alleging "defendants' failure to disclose the wrong they had committed." *See* Defs. Br. at 13 (citing *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 789 (2012) (rejecting estoppel argument where defendant merely failed to disclose its conduct); *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 491 (2007) (rejecting estoppel argument where defendant merely stayed "silen[t]" and did not disclose its wrongdoing)). Tether

did not merely stay silent; it actively misled and is still actively misleading Plaintiffs and Class members to this day.

Tether is equally wrong that any claims premised on purchases of USDT made (1) after its settlement with the NYSAG and (2) after Tether purportedly "revised" a statement on its website to admit that its "reserves," despite prior representations, are "comprised of both cash and other assets" are untimely. Defs. Br. at 14. As Tether admits in its motion, it did not "revise" these representations until February 2019. *Id.* The NYSAG did not conclude Tether's representations regarding USDT were fraudulent under February 2021. *Id.* at 14; Compl. ¶ 117. Using either of these dates, Plaintiffs are squarely within the three-year statute of limitations from the time this singular "wrong" purportedly stopped. *See id.* ¶¶ 10-11 (Plaintiff Anderson has purchased USDT since 2017, including as recently as October of 2021); ¶¶ 15-16 (Plaintiff Dolifka has purchased USDT since August of 2021, including as recently as October 2021). Moreover, neither Tether's website or the NYSAG settlement disclosed the truth regarding Tether's **other ongoing misrepresentations and omissions**, including about the nature of its reserves and USDT's status as a "stablecoin." Thus, unlike in *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020) (internal quotation omitted) (*see* Defs. Br. at 14), where defendant had fully disclosed the entirety of its conduct, Plaintiffs' claims are timely as Tether's misrepresentations and omissions continue through the present.

## III.  CONCLUSION

For the reasons stated herein, Tether's Motion to Dismiss should be denied in its entirety.

Dated:  May 19, 2022

*/s/ Christian Levis*
Christian Levis
Noelle Feigenbaum
Amanda Fiorilla
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
nfeigenbaum@lowey.com
afiorilla@lowey.com