UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW ANDERSON, and SHAWN DOLIFKA, individually and on behalf of all other persons similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>TETHER HOLDINGS LIMITED, TETHER LIMITED, TETHER INTERNATIONAL LIMITED, TETHER OPERATIONS LIMITED, IFINEX INC., BFXNA INC., and BFXWW INC.,<br><br>        Defendants. | Case No. 1:21-cv-10613-LTS-SN<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE THE [PROPOSED] FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 3

ARGUMENT ............................................................................................................................. 5

    I.  New Allegations in the Amended Complaint Address the Deficiencies Identified in the MTD Ruling, Demonstrating that Amendment is Not Futile ............................................ 5

        A.  The Amended Complaint Adequately Alleges that Plaintiff and Class Members Were Deprived of the Value of Their Purchases. ........................................................... 5

        B.  Plaintiff Has Adequately Pleaded a Substantia Risk of Future Injury. ......................... 9

    II.  Plaintiff Has Not Engaged in Undue Delay, Bad Faith, Dilatory Motive, or Repeated Failure to Cure Deficiencies .............................................................................................. 11

    III. The Proposed Amendments Do Not Unfairly Prejudice Defendants ............................... 11

CONCLUSION........................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baur v. Veneman*,
  352 F.3d 625 (2d Cir. 2003) ............................................................................................. 9, 10, 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................................... 5

*Block v. First Blood Assocs.*,
  988 F.2d 344 (2d Cir. 1993) ..................................................................................................... 12

*Cohen v. Ne. Radiology, P.C.*,
  No. 20-cv-1202 (VB), 2021 WL 293123 (S.D.N.Y. Jan. 28, 2021) ........................................... 9

*Colpitts v. Blue Diamond Growers*,
  527 F. Supp. 3d 562 (S.D.N.Y. 2021) ..................................................................................... 6, 7

*Duran v. Henkel of Am., Inc.*,
  450 F. Supp. 3d 337 (S.D.N.Y. 2020) .......................................................................................... 7

*Fishon v. Peloton Interactive, Inc.*,
  620 F. Supp. 3d 80 (S.D.N.Y. 2022) ............................................................................................ 8

*Foman v. Davis*,
  371 U.S. 178 (1962) ..................................................................................................................... 1

*Hedgeye Risk Mgmt., LLC v. Dale*,
  No. 21-cv-03687-ALC-RWL, 2022 WL 20056374 (S.D.N.Y. July 15, 2022) ......................... 12

*In re Pfizer Inc. Sec. Litig.*,
  No. 04 Civ. 9866 (LTS)(HBP), 2012 WL 983548 (S.D.N.Y. Mar. 22, 2012) ............................ 1

*Kroshnyi v. U.S. Pack Courier Servs., Inc.*,
  771 F.3d 93 (2d Cir. 2014) ........................................................................................................... 1

*LaFleur v. Whitman*,
  300 F.3d 256 (2d Cir. 2002) ......................................................................................................... 9

*Lee v. Kylin Mgmt. LLC*,
  No. 17-cv-7249 (JMF), 2019 WL 917097 (S.D.N.Y. Feb. 25, 2019) .......................................... 5

*Loreley Fin. (Jersey) No. 3 Ltd. V. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015) ................................................................................................ 1, 11

*M.G. v. New York State Off. of Mental Health*,
  572 F. Supp. 3d 1 (S.D.N.Y. 2021) .......................................................................................... 9

*McFarlane v. Altice USA, Inc.*,
  524 F. Supp. 3d 264 (S.D.N.Y. 2021) ................................................................................. 9, 10

*McNulty v. Polar Corp.*,
  No. 19 Civ. 8903 (LGS), 2020 WL 5658667 (S.D.N.Y. Sept. 23, 2020) ................................. 8

*Michalek v. Amplify Sports & Ent. LLC*,
  No. 11 Civ. 508 (PGG), 2012 WL 2357414 (S.D.N.Y. June 20, 2012) ................................. 11

*Sharpe v. A&W Concentrate Co.*,
  No. 19-cv-768 (BMC), 2021 WL 3721392 (E.D.N.Y. July 23, 2021) ..................................... 7

*State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*,
  246 F.R.D. 143 (E.D.N.Y. 2007) ........................................................................................... 12

*Stonewell Corp. v. Conestoga Title Ins. Co.*,
  No. 04-cv-9867 (KMW/GWG), 2010 WL 647531 (S.D.N.Y. Feb. 18, 2010) ....................... 12

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ................................................................................................................ 9

**Rules**

Fed. R. Civ. P. 15 ............................................................................................................................ 5

Fed. R. Civ. P. 15(a)(2) .................................................................................................................. 1

Fed. R. Civ. P. 42(a)(i)(A)(i) ......................................................................................................... 1

Pursuant to Fed. R. Civ. P. 15(a)(2) and the Court's August 4, 2023 Memorandum Order (ECF No. 37) ("MTD Ruling"), Plaintiff Shawn Dolifka submits this Memorandum of Law in Support of his Motion for Leave to file the [Proposed] First Amended Class Action Complaint[1] (attached as Exhibit A to the Declaration of Noelle Forde in Support of Plaintiff's Motion for Leave to File the [Proposed] First Amended Class Action Complaint ("Forde Decl.")).

Pursuant to Fed. R. Civ. P. 42(a)(i)(A)(i), Plaintiff also notices the voluntary withdrawal of Matthew Anderson's claims as alleged against all Defendants[2] without prejudice to Mr. Anderson's rights, if any, as an absent Class member, and without costs or fees to any party.

## INTRODUCTION

This Court's MTD Ruling dismissing Plaintiffs' Class Action Complaint (defined below) for lack of standing expressly permitted Plaintiffs to move for leave to amend within 21 days of the MTD Ruling. Fed. R. Civ. P. 15(a)(2) instructs that leave to amend shall be freely given when justice requires, a standard the Second Circuit has emphasized is "permissive" and "liberal." *Loreley Fin. (Jersey) No. 3 Ltd. V. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).[3] Leave to amend is generally granted, absent: (1) undue delay, bad faith, dilatory motive, or repeated failures to cure deficiencies; (2) undue prejudice to the opposing party; or (3) futility. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Pfizer Inc. Sec. Litig.*, No. 04 CIV. 9866 LTS HBP, 2012 WL 983548, at *2 (S.D.N.Y. Mar. 22, 2012) (same); *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93 (2d Cir. 2014) (addressing amended answer under same standard as amended complaint, holding in the absence of any apparent or declared reason, such

---

[1] The [Proposed] First Amended Class Action Complaint is referred to throughout as the "Amended Complaint."

[2] "Defendants" refers to Tether Holdings Limited, Tether Limited, Tether International Limited, Tether Operations Limited, Ifinex Inc., BFXNA Inc., and BFXWW Inc.

[3] All quotations and citations omitted unless otherwise indicated.

1

as undue delay, bad faith or dilatory motive on the part of the movant or undue prejudice to the opposing party, leave to amend should, as the rules require, be freely given). As none of these circumstances are present here, Plaintiff's motion for leave to amend should be granted.

<u>First</u>, because the allegations set forth in the Amended Complaint are tailored to address the key issue identified by the Court's MTD Ruling, amendment is not futile. The Court's MTD Ruling focused solely on injury-in-fact for purposes of constitutional standing. The Amended Complaint adds allegations that plausibly show Plaintiff and Class members were injured in at least two ways: by overpaying for Tether, which was not a stable fiat-backed currency as advertised, and by way of the substantial risk that they will be forced to trade their Tether tokens for a value below $1.00 in the future.

The Amended Complaint alleges in specific detail how Plaintiff overpaid for Tether. Plaintiff now alleges that he paid a value of approximately $1.00 for his Tether tokens. He adds that he and Class members chose to pay the price they did for their Tether tokens because of Defendants' misrepresentations that Tether was a uniquely stable cryptocurrency backed one-to-one by the U.S. dollar. The Amended Complaint also alleges that other non-dollar-backed cryptocurrencies were readily available for a cheaper price than Tether, further reinforcing the plausibility of Plaintiff's allegation that he chose to purchase Tether at its higher price point specifically because of Defendants' misrepresentations about its one-to-one dollar backing.

Plaintiff also pleads that he is at substantial risk of future harm from being forced to trade Tether at prices below $1.00. The Amended Complaint pleads facts demonstrating that the price of Tether has not been stable and has dropped below $1.00 numerous times since December 2021 until as recently as this year. There is a substantial and credible risk that it will do so again and that Plaintiff and Class members will receive less than $1.00 for their Tether

tokens when it does. Accordingly, Plaintiff's amendments cure the deficiency identified in the Court's MTD Ruling.

<u>Second</u>, Plaintiff has not engaged in undue delay or bad faith, acted with a dilatory motive, or repeatedly failed to cure deficiencies. To the contrary, Plaintiff seeks to amend the complaint for the first time pursuant to the Court's express invitation to do so and in compliance with the Court-approved deadline.

<u>Third</u>, there is no undue prejudice to Defendants. Defendants have not answered any complaint and no discovery has been served. There will only be a short delay while the Court resolves the instant motion and a subsequent motion to dismiss, should the Court grant leave to amend and Defendants move to dismiss a second time. Such delay will neither be significant nor undue. Finally, Plaintiff does not contemplate bringing his action in another jurisdiction.

**BACKGROUND**

This case is about Defendants' purposeful and repeated misrepresentations that its cryptocurrency, a "stablecoin" known as Tether, was backed one-to-one by U.S. dollars. Plaintiff alleges that cryptocurrency consumers value stablecoins like Tether chiefly because they avoid the extreme price fluctuations of other crytpocurrencies and because they command high interest rates when loaned. In other words, they are stable, income generating products. The fact that Tether was purportedly fully backed by the U.S. dollar, as opposed to another cryptocurrency, was unique, and made it especially valuable to consumers for its promise of stability and security. However, in reality Defendants failed to maintain cash reserves to back the billions of Tether tokens in circulation, as advertised. Plaintiff alleges that Plaintiff and Class members would not have purchased or would have paid less for Tether had they known the truth that it was *not* backed one-to-one by the U.S. dollar—the specific reason for which they purchased it.

Plaintiff filed the original Class Action Complaint on December 10, 2021. ECF No. 1 ("CAC" or "Class Action Complaint"). Defendants moved to dismiss the Class Action Complaint on April 28, 2022. ECF No. 29. On August 4, 2023, the Court issued its MTD Ruling. The Court's MTD Ruling dismissed the Class Action Complaint without prejudice for lack of constitutional standing. MTD Ruling at 3-5. Specifically, the Court held that the Class Action Complaint failed to plead an injury-in-fact by failing to plead that Plaintiff or Class members were deprived of any value. *Id.* The Court invited Plaintiff and Class members to move to amend their complaint within 21 days. *Id.* at 6.

Pursuant to the Court's MTD Ruling, Plaintiff submits this motion for leave to amend ("Motion"). The Amended Complaint adds allegations that:

- As of 2022, Tether still did not maintain enough cash reserves to back the Tether tokens in circulation (Amended Complaint ¶¶ 7, 85, 138);

- Identify the price that Plaintiff paid for certain of his Tether purchases (Amended Complaint ¶¶ 16);

- Clarify the unique characteristics of Tether from which the token derives its value, including that it is a stablecoin pegged to a fiat currency as opposed to another currency (Amended Complaint ¶¶ 3, 60-64);

- Other, cheaper cryptocurrency-backed and algorithmic stablecoins were available for purchase instead of Tether (Amended Complaint ¶ 63); and

- Reflect illustrative examples of repeated instances over the past several years in which Tether's price fell below $1.00, including in the last year alone (Amended Complaint ¶¶ 139-143).

As discussed herein, these allegations directly address the Court's concerns as set forth in its MTD Ruling.

The Amended Complaint also removes Matthew Anderson as a named plaintiff and, as two years have passed since the filing of the Class Action Complaint, updates certain facts so that they are current. For the reasons set forth below, Plaintiff's Motion should be granted.

## ARGUMENT

**I. New Allegations in the Amended Complaint Address the Deficiencies Identified in the MTD Ruling, Demonstrating that Amendment is Not Futile**

Leave to amend should be granted unless amendment would be futile. Fed. R. Civ. P. 15. Amendment is futile only "when [the amended complaint] does not contain enough allegations of fact to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The party opposing a motion for leave to amend bears the burden of establishing that amendment would be futile. *See Lee v. Kylin Mgmt. LLC*, No. 17-cv-7249 (JMF), 2019 WL 917097, at *3 (S.D.N.Y. Feb. 25, 2019).

The Court's MTD Ruling analyzed only whether the Class Action Complaint stated an injury-in-fact for purposes of Article III standing. MTD Ruling at 4-6. The Amended Complaint does state the requisite injury in fact such that Defendants cannot meet their burden to show that amendment would be futile.

**A. The Amended Complaint Adequately Alleges that Plaintiff and Class Members Were Deprived of the Value of Their Purchases.**

The Court held that although the Class Action Complaint pleaded that Plaintiffs and Class members "would not have purchased, or would have paid significantly less, for Tether tokens had they known these representations were false," (CAC ¶¶ 9, 18, 177, 188, 197, 200, 201), Plaintiffs did not allege sufficient facts to show that they were deprived of any value.

The Amended Complaint adds new allegations with facts sufficient to demonstrate that Plaintiff and Class members were deprived of value in that they overpaid for Tether. Specifically, the Amended Complaint sufficiently alleges that Plaintiff and Class members

5

suffered an injury-in-fact because they "purchased the [p]roduct in reliance on the alleged misrepresentation and, had he and Class members known the truth, they would not have bought the Product or would have paid less for it.'" *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (plaintiff adequately alleged injury-in-fact where he alleged that he purchased smoked almonds in reliance on the misrepresentation that their smoky flavor came from actual smoking rather than artificial flavoring).

The Amended Complaint does so by pleading Plaintiff specifically chose to purchase Tether over other, cheaper cryptocurrencies based on Defendants' misrepresentations that Tether was backed one-to-one by the U.S. dollar. Amended Complaint ¶¶ 3, 9, 14, 15, 63-65. New allegations explain that Tether's unique value lies in the fact that it is particularly stable and commands high interest rates due to its one-to-one dollar backing. *Id.* ¶¶ 62-65; 140. Accordingly, believing Tether was pegged to the dollar, Plaintiff Dolifka paid a value of approximately $1.00 each for the Tether tokens he purchased (*Id.* ¶¶ 12-13). But, as alleged in the Amended Complaint, if Tether were not pegged to the dollar, a consumer would not be willing to purchase Tether at $1.00, over other cheaper cryptocurrencies backed by, for example, cryptocurrency or algorithms (*Id.* ¶¶ 15; 62-65;). When Plaintiff Dolifka purchased Tether on September 23, 2021 at the inflated value of $1.00, for example, other cryptocurrencies were available for less than $1.00 (*Id.* ¶ 65). These facts supplement the existing allegations that Plaintiff would not have purchased Tether or would have paid less had he known that Tether was not in fact backed one-to-one by the U.S. dollar. (CAC ¶¶ 17, 12).

These allegations address the Court's concern that Plaintiff did not plead details such as the price Plaintiff paid for his Tether tokens. MTD Ruling at 4. More importantly, taken together they are sufficient to state a cognizable injury in fact: Plaintiff and Class members overpaid for

6

Tether. *See Colpitts*, 527 F. Supp. 3d at 575 (plaintiffs sufficiently plead Article III standing where complaint included allegations that plaintiffs prefer the characteristics of naturally smoked products, that they bought defendant's product at a higher price as a result of defendant's misrepresentations, and comparing the price of the product they bought to other similar products); *see also Sharpe v. A&W Concentrate Co.*, No. 19-cv-768 (BMC), 2021 WL 3721392, at *2 (E.D.N.Y. July 23, 2021) (a plaintiff "comfortably satisfies the injury-in-fact prong" with an allegation that, absent the misrepresentation, the plaintiff "would not have paid the same amount" for the product.").

Courts also consider that a plaintiff "suffers an injury when 'a company marketed a product as having a 'unique quality[,]' . . . the marketing allowed the company to charge a price premium for the product, and . . . the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality.'" *See Sharpe*, 2021 WL 3721392, at *2 (citing *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350 (S.D.N.Y. 2020)). The Amended Complaint alleges exactly this. It pleads that Tether marketed its tokens as having a unique quality—that they were backed one-to-one with the U.S. dollar, making them particularly stable—and that that misrepresentation then allowed them to charge Plaintiff and Class members $1.00 each for their tokens, and artificially maintain that inflated value. *See, e.g.*, Amended Complaint ¶¶ 4, 15, 64-65, 74-80, 104.

The Amended Complaint clarifies the primary unique quality from which Tether tokens derive their value, namely: "[t]he unique value of a stablecoin like Tether comes from its stability. Its stability is derived from the promise that the issuing entity will maintain sufficient reserves and only issue new coins commensurate with deposits in the reserves." Amended Complaint ¶ 64. The Amended Complaint further clarifies additional unique qualities of Tether

7

arising out of its purported one-to-one link with the U.S. dollar for which consumers are willing to pay a premium: Tether tokens command high interest rates (Amended Complaint ¶ 62) and are more stable than cryptocurrency-backed stablecoins (Amended Complaint ¶ 63).

Plaintiff and consumers value Tether specifically for its stability. Amended Complaint ¶¶ 64-65. Consequently, Tether's marketing of Tether tokens as being pegged to the U.S. dollar allowed it to charge one U.S. dollar for each Tether when it was not worth $1.00 and Plaintiff and consumers easily could (and would) have bought cheaper, less stable cryptocurrency, or none at all. Amended Complaint ¶¶ 13-14; 64-65. As previously alleged, Plaintiff and consumers did not know and only later learned that Tether tokens lacked the unique qualities for which they paid. Amended Complaint ¶¶ 13-14; 127-139; 146-149.

Accordingly, the Amended Complaint pleads that Defendants "misrepresented what Plaintiff[] allege[s] is a unique quality about its products" that caused Plaintiff to pay "for those products over and above what they were worth." *Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 93–94 (S.D.N.Y. 2022) (finding Article III standing where plaintiffs alleged defendants' representations that their "on-demand library would be ever growing indicated to the market that there would be value associated with the products that resulted in an increased price when that value was not actually there"). This is a "classic price premium theory of injury that is plausible and cognizable." *McNulty v. Polar Corp.*, No. 19 Civ. 8903 (LGS), 2020 WL 5658667, at *5 (S.D.N.Y. Sept. 23, 2020). The Amended Complaint further details the value of Tether tokens on several days between December 2021 and August 2023, demonstrating that the value of the product for which Plaintiff and Class members paid $1.00 was in fact frequently less than $1.00. Amended Complaint ¶¶ 140-143. Plaintiff's Motion should thus be granted.

## B. Plaintiff Has Adequately Pleaded a Substantia Risk of Future Injury.

Plaintiff's amendments are not futile for the additional reason that the Amended Complaint adequately pleads a substantial risk that Plaintiff and Class members will be forced to trade their Tether tokens for less than $1.00 in the future. "An injury need not be actualized to satisfy Article III." *McFarlane v. Altice USA, Inc.*, 524 F. Supp. 3d 264, 271 (S.D.N.Y. 2021) (denying motion to dismiss for lack of subject-matter jurisdiction where plaintiffs alleged data breach increased risk of future identity theft). Instead, a future injury may satisfy Article III's standing requirements "so long as it is certainly impending, or there is a substantial risk that the harm will occur." *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). "Ultimately, the injury-in-fact requirement is meant to "ensure that the plaintiff has a personal stake in the outcome of the controversy." *Id.*

The Second Circuit has held that enhanced risk of future injury may constitute injury-in-fact where a plaintiff alleges actual future exposure to that increased risk. *See Baur v. Veneman*, 352 F.3d 625, 633-35, 640-42 (2d Cir. 2003) (holding plaintiff had standing to seek injunction to stop defendants from butchering certain cows due to plaintiff's enhanced risk of mad cow disease as a consumer of beef); *LaFleur v. Whitman*, 300 F.3d 256, 270 (2d Cir. 2002) (likelihood of exposure to additional sulfur dioxide emissions qualifies as injury-in-fact); *see also Cohen v. Ne. Radiology, P.C.*, No. 20-cv-1202 (VB), 2021 WL 293123, at *4 (S.D.N.Y. Jan. 28, 2021) (Article III standing satisfied where plaintiff alleged intentional data breach created risk of future identity theft); *M.G. v. New York State Off. of Mental Health*, 572 F. Supp. 3d 1, 11 (S.D.N.Y. 2021) (holding plaintiffs plausibly pleaded Article III standing where they "alleged they are being deprived of services that result in "a serious risk of institutionalization" for their mental health).

Plaintiff's Amended Complaint pleads an increased risk that Tether will continue to devalue and that Plaintiff and Class members will suffer a loss by having to trade Tether at a value below $1.00. In particular, the Amended Complaint pleads that Tether dropped below $1.00 numerous times between December 2021 and August 2023. Amended Complaint ¶¶ 140-143; *see also* Figure 12. Indeed, the Amended Complaint pleads that Tether's price remained below $1.00 for nearly two months from June to July, 2021. *Id.* ¶ 142. The Amended Complaint further pleads that Tether dropped to 98 cents in 2022 and then de-pegged from the dollar again as recently as *this week*. *Id.* ¶¶ 143. As alleged, "[t]hese consistent price fluctuations create a substantial risk that Tether tokens will continue to devalue and cause Plaintiff and Class members to trade their Tether tokens at prices lower than $1.00." *Id.* ¶ 144.

These allegations plead a substantial risk of future harm. The publicly available historical Tether prices plead in the Amended Complaint confirm Plaintiff's allegations that Tether was not truly worth $1.00, did not stay pegged to the dollar, and was not as stable as Plaintiff and Class members were led by Tether to believe. *See Baur*, 352 F.3d at 637 ("the fact that government studies and statements confirm[ed] several of [plaintiff's] key allegations" was a "critical factor" weighing in favor of finding standing satisfied). Additionally, the fact that Tether's price repeatedly fluctuated, dropping below $1.00 numerous times strongly suggests it will happen again. *McFarlane*, 524 F. Supp. 3d at 272 (finding standing, explaining "the fact that fraudulent credit cards have *already been opened* in the names of three [p]laintiffs strongly suggests that the cyber criminals responsible for the breach will use the others' data for criminal purposes or sell it to others for such use.") (emphasis added).

Plaintiff "need not present more specific scientific evidence or statistical verification to prove that the risk actually exists." *Baur*, 352 F.3d at 642 (plaintiff pleaded credible threat of

10

harm from downed cattle despite inability to allege the relevant disease or any contaminated products had ever entered the United States). Moreover, Plaintiff's risk of injury does not rest "on the independent actions of third-parties" such that it is too speculative for standing purposes. *Id.* at 640 (in other cases where standing was lacking "the occurrence of the alleged future injury rested on the independent actions of third-parties not before the court"). Plaintiff's risk of injury rests on the price of Tether, which has consistently and repeatedly de-pegged from the dollar—and continues to do so. Plaintiff's amendments are therefore not futile and his Motion should be granted.

## II. Plaintiff Has Not Engaged in Undue Delay, Bad Faith, Dilatory Motive, or Repeated Failure to Cure Deficiencies

Plaintiff has not engaged in undue delay or acted in bad faith or with dilatory motive in moving for leave to file the Amended Complaint. In response to the Court's MTD Ruling, Plaintiff expeditiously conducted further investigation and legal research to augment his pleadings. Plaintiff then filed the instant Motion pursuant to the Court's invitation to move for permission to amend. MTD Ruling at 6. Prior to the Court's ruling, Plaintiff was not able to "see the necessity of amendment or [] in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley*, 797 F.3d at 190. Additionally, Plaintiff has not repeatedly failed to cure deficiencies—this is Plaintiff's first request to amend.

Accordingly, under the circumstances and procedural posture of this case, it is inconceivable that Defendants could show "undue delay," "bad faith" or "dilatory motive" on Plaintiff's part in moving to amend. *See id.* (identifying these items as grounds for denial).

## III. The Proposed Amendments Do Not Unfairly Prejudice Defendants

Prejudice to the opposing party is "the most important factor" in determining whether leave to amend should be granted or denied. *Michalek v. Amplify Sports & Ent. LLC*, No. 11

11

CIV. 508 PGG, 2012 WL 2357414, at *5 (S.D.N.Y. June 20, 2012). The court considers three factors when assessing whether undue prejudice exists: 1) whether amendment will "require the opponent to expend significant additional resources to conduct discovery and prepare for trial"; (2) whether it will "significantly delay the resolution of the dispute"; and (3) whether it will "prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993); *see also Hedgeye Risk Mgmt., LLC v. Dale,* No. 21-cv-03687-ALC-RWL, 2022 WL 20056374, at *1 (S.D.N.Y. July 15, 2022) (finding no undue prejudice). "The party opposing the motion for leave to amend carries the burden of demonstrating that it will be substantially prejudiced by the amendments." *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 246 F.R.D. 143, 148 (E.D.N.Y. 2007); *see also Stonewell Corp. v. Conestoga Title Ins. Co.*, No. 04-cv-9867 (KMW/GWG), 2010 WL 647531, at *3 (S.D.N.Y. Feb. 18, 2010) (finding no undue prejudice).

Here, Defendants cannot meet their burden to demonstrate that any of the necessary factors are present. First, Defendants have not answered a complaint in this action and no discovery has been served; therefore, no additional resources will be required. Second, a successful amendment will delay resolution of the dispute only slightly and only if Defendants move to dismiss a second time. And third, Plaintiff does not contemplate bringing an action in any other jurisdiction. No prejudice exists.

## CONCLUSION

For the reasons set forth above, the Court should grant Plaintiff's motion for leave to file the [Proposed] First Amended Class Action Complaint. Plaintiff has not sought any unfair advantage; Defendants have not been unduly prejudiced; and amendment is not futile as the Amended Complaint addresses the deficiencies the Court identified in its MTD Ruling.

Dated:  August 25, 2023

*/s/ Christian Levis*
Christian Levis
Noelle Forde
Amanda Fiorilla
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
nforde@lowey.com
afiorilla@lowey.com

13

**CERTIFICATE OF SERVICE**

I hereby certify that I am the ECF User whose ID and password are being used to electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses registered, as denoted on the Electronic Mail Notice List, and I hereby certify that I have caused to be mailed a paper copy on the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

*/s/ Christian Levis*
Christian Levis